EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

DELAWARE TRUST COMPANY,
Defendant.

Civ. A. No. 75–157.

United States District Court,
D. Delaware.

Jan. 8, 1979.

James W. Garvin, Jr., U. S. Atty., Wilmington, Del., Johnny J. Butler, Acting Asst. Gen. Counsel, Philadelphia, Pa., Ruth Weyand, Supervisory Trial Atty., Washington, D.C., Arneda J. Hazell, Trial Atty., E. E. O. C., Philadelphia Pa., for plaintiff.

John P. Sinclair and Donald J. Wolfe, Jr., Potter, Anderson & Corroon, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

The Equal Employment Opportunity Commission (hereinafter "EEOC") brought this action under § 706(f)(1), (f)(3) and (g) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended (Supp. II 1972) (hereinafter "Title VII").[1] The defendant Delaware Trust Company, a Delaware commercial banking concern, first moved to certify a plaintiffs' class under Rule 23 of the Federal Rules of Civil Procedure and oral argument was heard on that motion. Subsequent to oral argument, defendant withdrew its motion to certify a class and filed in its stead a motion to dismiss the class allegations of the complaint.[2]

Although a prior opinion in this case more extensively sets out the background

---

1. Section 706 provides, in pertinent part:

    (f)(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. . . . The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission . . . . If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely applica-

    tion, the court may, in its discretion, permit the Commission . . . to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsections (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

    \*    \*    \*    \*    \*    \*

    (3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. . . .

    (g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. . . .

2. The EEOC has not responded to this change of posture on the part of the defendant and it will be assumed that the Commission has no objection to it.

facts,[3] a brief recitation is in order. This action was triggered by a charge filed with the EEOC on March 13, 1972 by Linda Hsu, who complained that the defendant discriminated against her on the basis of sex. According to Ms. Hsu, when she interviewed with the Delaware Trust Personnel Department for an administrative position, she was advised that the kinds of positions in which she was interested required training on the part of the bank and thus were unavailable to women because of the possibility that pregnancy or a husband's change of job location would result in a woman's departure from a position for which the Delaware Trust had trained her. Neither the merits of Ms. Hsu's complaint nor the practices and policies of the Delaware Trust in general are the subject of this opinion.

The Complaint filed by the EEOC nowhere mentions Ms. Hsu: it levels a multi-faceted charge of sex discrimination against Delaware Trust,[4] limited by neither class of employee nor period of time.[5] Every conceivable aspect of the Delaware Trust employment and personnel practices are the subject of the claim: hiring, recruitment, job classification, training and promotion. The Complaint does not detail any of the asserted flaws in the foregoing categories; it merely mentions all of them. The EEOC conceded at oral argument that the Commission seeks relief on behalf of a class that consists of female employees and prospective female employees of Delaware Trust at time of interview (non-hires). At oral argument it was further conceded that the Commission at that time could not name for the defendant those employees or potential employees on behalf of whom it sues. Counsel for the Commission stated at oral argument that the EEOC usually possesses that information by the time of the pre-trial order and always in advance of trial, but that frequently, the information is gleaned during the discovery process.[6] It is emphasized, however, that the Court does not rely on the Commission's concession for the conclusion that this lawsuit is a class action: the Complaint speaks for itself.[7]

3. *Equal Employment Opportunity Commission v. Delaware Trust Co.*, 416 F.Supp. 1040 (D.Del.1976).

4. The Complaint, Doc. 1, reads in pertinent part:

   7. Since July 2, 1965 and continuously up until the present time, Delaware Trust has intentionally engaged in discriminatory practices based on sex in violation of Section 703 of Title VII, 42 U.S.C. Section 2000e-2. Said unlawful employment practices include, but are not limited to the following:
   A. The maintenance of a policy and practice of discriminating against females in recruitment and hiring;
   B. The maintenance of discriminatory job classification training, and promotion policies and practices against females;
   C. The maintenance of policies and practices which deprive female employees and prospective female employees of substantial economic benefits.
   8. The effect of the practices and policies complained of in paragraph 7, and the various subparagraphs thereof, has been to deprive applicants and employees herein involved of equal employment opportunities and otherwise adversely to effect their status as applicants and employees because of their sex, in violation of Title VII.
   WHEREFORE, the Commission respectfully prays this Court:

   A. Grant a permanent injunction enjoining Delaware Trust, its officers, agents, employees, successors, assigns, and all persons in active concert or participating with it, from engaging in any employment practice which discriminates because of sex.
   B. Order Delaware Trust to institute and carry out policies, practices, and affirmative action programs which provide equal employment opportunities for females and which eradicate the effects of Delaware Trust's past and present unlawful employment practices.
   C. Order Delaware Trust to make whole those persons adversely affected by the unlawful employment practices described above by providing appropriate back pay, with interest, in an amount to be proved at trial, and other relief necessary to eradicate the effects of its unlawful employment practices.
   D. Grant such further relief as the Court deems necessary and proper.
   E. Award the Commission its costs in this action.

5. The Complaint used July 2, 1965, the effective date of the Act, to establish the relevant time period.

6. Doc. 61, at 46–47, 52.

7. Despite the expansive phrasing of the Complaint, the Commission has not brought suit

Understandably, faced with the possibility of liability to all members of a large and vaguely defined class, the defendant seeks the refuge of the Rule 23 certification procedure. It asserts several reasons why that Rule would provide both procedural protections and limitations upon its potential liability, should it be found liable at the close of this lawsuit. First, Delaware Trust argues that the complaint is so broadly drafted that the defendant cannot assume that Ms. Hsu's charge itself, leveled at the management-trainee program, should be Delaware Trust's guidepost in determining what aspects of its personnel policies are the subject matter of the lawsuit, since all of the personnel policies of Delaware Trust are put in issue by the Complaint. Essentially, it argues that it does not know what policies or decisions it must defend. Neither does it know which employees or applicants, or even which classes of employees or applicants, in favor of whom liability may potentially run. Second, it seeks the benefit of the Third Circuit's decision in *Wetzel v. Liberty Mutual Insurance Company*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S.

1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), which held that a private class suing under § 706 is limited to those individuals who would not have been barred from lodging a charge with the EEOC under the limitation period imposed by § 706(e). *Wetzel*, the defendant argues, would limit the class to those persons whose claims could have arisen during the 300-day period prior to Ms. Hsu's charge. Thus, Delaware Trust's exposure to liability would be similarly confined.[8] Third, Delaware Trust argues that the class membership should be defined so that, at the conclusion of the lawsuit, Delaware Trust's rights and obligations will be conclusively established. If a class were certified under 23(b)(2),[9] its liability or non-liability to that class will be res judicata and binding on all class members, as the judgment under Rule 23(c)(3) defines them.[10]

Although the question whether the EEOC must comply with Rule 23 in order to bring suit under section 706 on behalf of the class of discriminatees has been extensively litigated in the district courts,[11] only one Cir-

---

here under § 707 and it indicated at oral argument that it could not do so on the facts presently before it since no pervasive "pattern or practice" of sex discrimination has heretofore been uncovered, although the Commission suggested that more individuals than Ms. Hsu were involved. Doc. 61, at 39. Accordingly, the Court has no occasion to consider either the applicability of § 707 to this lawsuit or the applicability of Rule 23 to § 707 suits in general.

8. The defendant apparently does not dispute, however, that as to all members of the class as defined under *Wetzel*, back pay would extend two years into the past.

9. In *Wetzel, supra*, the Third Circuit indicated a decided preference for 23(b)(2) rather than (b)(3) class actions under Title VII because "the conduct of the employer is actionable 'on grounds generally applicable to the class,' and the relief sought is 'relief with respect to the class as a whole.'" Thus, should the Commission decide to move for class certification here, Rule 23(b)(2) will be the appropriate vehicle for class relief and neither notice nor an "option-out" will be required. *See Wetzel, supra*, at 250–53.

10. Rule 23(c)(3) provides:

(3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

11. Those holding that the EEOC must comply with Rule 23, under § 706 or § 707, include *EEOC v. Page Engineering Co.*, 17 EPD ¶ 86.02 (N.D.Ill.1978); *EEOC v. Akron National Bank and Trust Co.*, 78 F.R.D. 684 (N.D.Ohio 1978); *EEOC v. Continental Oil*, 393 F.Supp. 167 (D.Col.1975), *aff'd on other grounds*, 548 F.2d 884 (10th Cir. 1977); *EEOC v. Data Point Corp.*, 457 F.Supp. 62 (W.D.Tex.1975), *aff'd*, 570 F.2d 1264 (5th Cir. 1978). Cases holding to the contrary include *EEOC v. Vinnel-Dravo-Lockheed-Mannix*, 417 F.Supp. 575 (E.D.Wash. 1976); *EEOC v. General Telephone Co. of Northwest*, 16 FEP 476 (W.D.Wash.1977); *EEOC v. Pinkerton's, Inc.*, 14 FEP 1431, 1433 (W.D.Pa.1977); *EEOC v. C.T.S. of Asheville, Inc.*, 13 FEP 852 (W.D.N.C.1976); *EEOC v.*

cuit Court of Appeals has addressed this issue so far. In *EEOC v. D. H. Holmes Co.*, 556 F.2d 787 (5th Cir. 1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129, the Fifth Circuit concluded that when the EEOC seeks relief on behalf of a class, it must comply with Rule 23. Prior to this relatively recent spate of decisions, neither the EEOC, nor the Attorney General under § 707, was required to delineate a class when suing for class relief. *See e. g., International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Equal Employment Opportunity Commission v. Local 638, Sheet Metal Workers' International Assoc.*, 532 F.2d 821 (2d Cir. 1976). Consequently, the procedures followed by the courts in determining what employees or classes of employees were entitled to relief in a government suit differ widely from case to case.

The Commission, of course, has abundant reasons for opposing class certification. While Rule 23(c)(1) requires that a court determine the propriety of a class action "as soon as practicable" after commencement of the lawsuit, the EEOC's procedure, as outlined at oral argument, is to determine the nature and extent of the class during discovery. The Commission thus maintains great flexibility throughout the lawsuit in determining what employees will be entitled to benefit from a decree in the government's favor. Under Rule 23, the numerosity requirement necessary to maintain a class action would have to be met at the time of class certification. In contrast, although the complaint in this action was filed in 1975, the Commission cannot yet determine whether the class for whom it seeks relief is numerous enough for certification under Rule 23. Moreover, since most private class actions under Title VII are brought under 23(b)(2), *see Wetzel, supra*, all employees included in the action are

bound by the decree through principles of res judicata ·as to all issues litigated. At least three courts of appeals have held, however, that a government suit that results in class-wide relief does not preclude individual employees from seeking other or additional relief. *See United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975); *EEOC v. Detroit Edison*, 515 F.2d 301 (6th Cir. 1975); *Rodriguez v. East Texas Motor Freight, Inc.*, 505 F.2d 40, 65 (5th Cir. 1974), *rev'd on other grounds*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Williamson v. Bethlehem Steel Corp.*, 468 F.2d 1201, 1203–04 (2d Cir. 1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1893, 36 L.Ed.2d 390 (1973).

The bar of res judicata alone, of course, provides the Commission with a powerful incentive to resist class certification, although there is at least one indication in the legislative history that Congress intended any relief obtained by the government under § 706 to be conclusive. In discussing a provision in a predecessor bill to the 1972 Amendment allowing for individual suits in cases of Commission delay, a House Committee Report states: "It should be noted . . . that it is not the intention of the committee to permit an aggrieved party a chance to retry his case merely because he is dissatisfied with the Commission's action." H.R.Rep.No.92–238, [1972] U.S.Code Cong. & Admin.News, Vol. 2 at 2137, 2148.

Thus, with the exception of those few cases in which class certification has been ordered, *see* note 11, *supra*, the Commission's practice bears a strong resemblance to pre-Rule 23 class actions: upon a finding of the defendant's liability and a concomitant award of monetary relief to the affected class, each individual covered by the decree may either accept the award or reject it.[12] This procedure for "one-way in-

*Lutheran Hospital*, 10 FEP 1177 (E.D.Mo.1974); *EEOC v. Rexene Polymers Co.*, 10 FEP 61 (W.D.Tex.1975).

**12.** No rule of which this Court is aware, in the absence of a Rule 23 certification, would preclude any employee from accepting an award obtained in a government suit and suing for additional relief. In fact, in *Williamson, supra*,

at 1203, a class of employees benefited by a prior decree did just that. Thus, not even acceptance of an award by an employee under a government decree provides any measure of finality for the defendant, although at least one court has held that when an individual accepts compensation under a consent decree and signs a release, he is bound by the terms of the release and thus may be barred from additional

tervention" after a finding of liability does not conform to any permissible class action under the Rule. Only in 23(b)(3) classes may individual members "opt out" of participation, but even in those cases, the option must be exercised prior to a finding of liability. In a 23(b)(1) or (b)(2) class action, by contrast, no member has the option of self-exclusion. The unfairness to a Title VII defendant under the EEOC's procedure is too obvious to warrant extensive discussion. Even if the Court were disposed to discount any potential or actual unfairness to Title VII defendants, it cannot ignore the interests of judicial economy clearly undermined by present EEOC procedures. *See Equal Employment Opportunity Commission v. Datapoint Corp.*, 570 F.2d 1264, 1268 (5th Cir. 1978). The question, then, is whether anything in Title VII or Rule 23 either compels or counsels in favor of the Commission's noncompliance with the Federal Rules when it seeks class relief under § 706.

■ Although the Federal Rules of Civil Procedure specifically exempt certain government agencies and procedures from their scope, the Equal Employment Opportunity Commission is not one of them. *Holmes, supra*, at 795. Because the certification of a class action is within the sound discretion of the district judge, the fact that Rule 23 provides a mechanism for the certification of classes does not alone compel adherence to the Rule. The Rule is not mandatory in every case in which class relief is alleged, although, like all other Federal Rules, it would appear to be mandatory in those cases in which a class action is appropriate. As the court in *EEOC v. Page Engineering Inc.*, 17 EPD ¶ 8602 (N.D.Ill. 1978), emphasized, "A primary concern of the Advisory Committee in formulating the 1966 alterations [to Rule 23 of the Federal Rules of Civil Procedure] was the plight of a defendant who was confronted with possible obligations toward numerous persons

constituting a class. Rule 23 affords defendants faced with a class action the right to avoid the consequences of inconsistent adjudications and the right to know exactly to whom it might be liable."

■ Similarly, nothing in the legislative history of Title VII of the Civil Rights Act supports the EEOC's contention that it is exempt from Rule 23. Indeed, the only mention of the class action device in the legislative history cuts decidedly the other way. In the Senate debate on the 1972 amendments, Senator Javits explained the operation of § 707, codified at 42 U.S.C. § 2000e-6, and providing for suits by the Commission whenever it has "reasonable cause to believe any person . . . is engaging in a pattern or practice" of discrimination:

These are essentially class actions and if [the Commission] can sue for an individual claimant, then they can sue for a group of claimants. It seems to me that this is provided for by the Rules of Civil Procedure in the federal courts . . . . . I have referred to the Rules of Civil Procedure. I now refer specifically to Rule 23 of those Rules, which is entitled 'Class Actions' and which gives the opportunity to engage in the federal court in class actions by properly suing parties. We ourselves have given permission to the EEOC to be a *properly suing party.* 118 Cong.Rec. 4081–82 (1972), Reprinted in Senate Committee on Labor and Public Welfare, 92nd Cong. 2d Sess., Legislative History of the Equal Employment Opportunity Act of 1972, at 1589–90 (1972) (emphasis supplied).

Although this reference to the legislative history concerns § 707 rather than § 706, it does bear directly upon the issue presently before the Court and hence must be heeded, particularly in the absence of any legislative indication to the contrary. Although the thrust of the language of § 707 strongly suggests that relief would run to a class,[13]

---

relief. *Rodriguez v. East Texas Motor Freight*, 505 F.2d 40, 65 (5th Cir. 1974), *rev'd on other grounds*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

**13.** Section 707 provides:
(a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or

whereas § 706 does not, private class actions under Rule 23 and that section are commonplace, and the EEOC frequently seeks class relief under § 706, as exemplified by this action. One possible interpretation of the two sections is that class relief may be sought by the Commission only under § 707 and that only relief for the charging individual may be obtained under § 706. Senator Javits' remarks would not contradict such a construction of the two statutory sections. Although one court has so held, see *EEOC v. Akron National Bank and Trust Co.*, 78 F.R.D. 684 (N.D.Ohio 1978), without more explicit guidance from Congress, this Court cannot exclude the Commission from the privilege of bringing a Rule 23 class action any more easily than it can exclude the Commission from the burden of bringing one. Since nothing in either the Federal Rules or Title VII expressly exempts the Commission from Rule 23 when it seeks class relief under § 706, it is concluded that the only method for obtaining class relief available to the Commission in § 706 suits is by certification of a class, provided all requisites of Rule 23(a) are met. Whether the Commission can meet the requirements of 23(a) is the question to which the Court next turns.

Presumably because nothing in either the Federal Rules or Title VII expressly exempts the Commission from Rule 23, the Commission has focused here on the literal language of the Rule, maintaining, first, that it cannot comply because it is not a member of the class for which it sues; second, its claim is not "typical of the claims of other members of the class" because it vindicates the public interest when it sues rather than the claims of individual employees. Finally, the Commission contends that it cannot "fairly and adequately protect the interests of the class," again because its first obligation is the promotion of the public interest, which may conflict with the interests of some discriminatees. Although the Court will address these concerns more specifically below, stripped to their essentials, these arguments simply reflect the undisputed fact that Rule 23 does not on its face appear to take into consideration the possibility that a government agency will be suing on behalf of a class. That the Rule itself does not literally apply to the situation before the Court is undisputed. On the other hand, it may take a Procrustes to fit the EEOC into the spirit of Rule 23(a).

■ The language of Rule 23(a) requiring that only members of a class may maintain class actions is closely connected to the requirements of typicality of claims and adequacy of representation. That a named plaintiff in a class action is a member of the class he seeks to represent is designed to insure that his claims typify those of the class and that he will protect their interests while he protects his own. More fundamentally, however, it focuses on whether the named plaintiff possesses standing:

A named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. *Allee v. Medrano*, 416 U.S. 802, 828–29, 94 S.Ct. 2191, 2207, 40 L.Ed.2d 566 (1974) (Burger, C. J., concurring and dissenting).

practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

Subsection (c) of § 707 provided that two years after the date of the Amendments, the EEOC would assume the Attorney General's responsibilities under § 707. Now the Commission enforces both § 706 and § 707.

Although several courts, including one in this circuit, have held that the EEOC cannot comply with Rule 23 because it is not a class member, *see EEOC v. Pinkerton's Inc.,* 14 FEP 1431, 1433 (W.D.Pa.1977); *EEOC v. General Telephone Co.,* 16 FEP 476, 479 (W.D.Wash.1977), the language of Title VII itself confers standing upon the EEOC to bring suit on behalf of the complainant. *Holmes, supra.* Senator Javits, in the remarks quoted above with respect to § 707, reiterated the point when he emphasized that the Commission is the "properly suing party." If the Commission has standing to sue on behalf of the charging party, it is difficult not to recognize its standing to sue on behalf of other identifiable individuals whose claims are discovered in the pre-complaint investigation. To permit the Commission to represent similarly situated but not identified class members under § 706 only carries the analysis one small step further. Moreover, if the crux of the membership requirement of Rule 23(a) is the injury-in-fact aspect of standing, as *Allee v. Medrano* suggests, then the Commission's standing to sue on behalf of the complaining party would likewise be called into question by a determination that the Commission cannot represent a similarly situated class because it is not a class member. Accordingly, since Congress when it enacted § 706(d) granted standing for the Commission to sue on behalf of individuals, it would likewise possess standing to represent a similarly situated class and can function as a class "member" under Rule 23(a). Of course, the Commission does not disagree that it has standing in the constitutional sense to represent the class: it merely wishes to avoid the consequences of Rule 23.

Pointing to its Congressional mandate to vindicate the public interest, the Commission also contends that its claims and interests are not typical of those of the class it represents as required by Rule 23(a). Finally, in what amounts to a variation of this argument, it claims that it cannot "fairly and adequately protect the interests of the class" because its primary commitment is the public interest. Thus, the Commission has represented to this Court that it cannot adequately represent a class certified under Rule 23. A named plaintiff's misgivings about its ability to represent a class would preclude, of course, the certification of a class.[14] Since this Court has already held that the Commission may not seek class relief under § 706 outside of the procedures of Rule 23, the Commission may desire to reevaluate its present position that it cannot adequately represent a class of present, former and potential female employees of Delaware Trust. Any arguments respecting adequacy of representation and typicality of claims will be entertained anew when and if the Commission decides to seek class certification.

■ In conclusion, the Court finds that, to the extent that the EEOC seeks individualized relief flowing to unnamed members of an affected class, it must comply with Rule 23 of the Federal Rules of Civil Procedure. Accordingly, defendant's motion to dismiss the class allegations of the complaint will be granted, unless the Commission moves for class certification by the date specified in the accompanying order of this date. At a hearing on a certification motion, if one is made, the plaintiff will bear the burden of proof on questions such as numerosity, adequacy of representation and typicality of claims. *See Dennis v. Norwich Pharmacal Co.,* 5 FEP 921, 922 (D.S.C.1973). As emphasized above, however, the present complaint is couched entirely in terms of a class action. As a consequence, if the Commission determines not to seek certification of a class, it may be appropriate for it to amend its present com-

---

14. Although the Commission did not make the argument, the Supreme Court recently has emphasized that the failure of a named plaintiff to move for class certification "bears strongly on the adequacy of the representation that those class members might expect to receive." *Rodriguez v. East Texas Motor Freight,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977). Since the EEOC seeks class relief here, albeit outside of Rule 23 procedures, it is doubtful that it would completely neglect the interests of the class, which is essentially what the failure of a private party to move for certification would suggest.

plaint to reflect a more particularized claim, naming those specific individuals on whose behalf it seeks relief.

An order will be entered in conformity with this opinion.